IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA STOUDT | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | NO.  08-cv-2643 |
| ALTA FINANCIAL MORTGAGE, | : | |
| KELLY WOOD; & | : | |
| CITIMORTGAGE, INC. | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Defendant CitiMortgage's Motion to Dismiss (Doc. No. 10).  For the following reasons, the Motion is granted and the claims against CitiMortgage are dismissed.

## Background

The Plaintiff Linda Stoudt ("Stoudt") sought a loan from the Defendant ALTA Financial Mortgage ("ALTA") to lower her monthly payments on an existing mortgage.  (Second Am. Compl. ¶ 7.)  The Defendant Kelly Wood ("Wood') is employed as senior loan officer by ALTA. (Id. ¶ 5.)  Wood "promised [Stoudt], in a series of 30 or more phone calls," that [Stoudt's] new monthly mortgage payment would be $478.81 after refinancing with [ALTA].  (Id. ¶¶ 10-11.)

At the closing, Stoudt realized that the loan papers set her new monthly mortgage payment after refinancing at $590.00.  (Id. ¶¶ 12-13.)  "The loan application for the loan noted [Stoudt]'s social security income as being 20% higher by the device of grossing up this  income." (Id. ¶ 19.)  To this point, Stoudt had not received any documentation regarding the new loan.  (Id. ¶ 13.)  Stoudt contacted Wood about the increased payment.  (Id. ¶ 14.)

Wood told Stoudt that it was a typographical error and promised that she would send

Stoudt a corrected document.  (Id. ¶ 15.)  Stoudt did not receive anything from Wood.  (Id. ¶ 16.) "As a result of increased monthly loan payments which now consume half of her monthly income, [Stoudt] has suffered severe emotional distress and anxiety as a result of defendants' conduct described above due to fear that she might experience another stroke having had three previous to the events described."  (Id. ¶ 17.)

Stoudt is suing ALTA, Wood, and CitiMortgage, Inc. ("Citi").  Citi "purchased and/or serves as trustee of an investment trust which purchased [Stoudt's] loan under a pooling an[d] servicing agreement ("PSA") as part of a pool of mortgages originated by [ALTA]."  (Id. ¶18.) Stoudt's theories for relief include one count of fraud and violations of Pennsylvania's Consumer Protection Law ("UTPCPL").  Stoudt contends that ALTA and Wood are directly liable.  As to Citi, she contends that it is derivatively liable as the assignee of the loan.  Now, Citi moves that the Court dismiss the claims against it.

**Standard**

When reviewing a motion to dismiss for failure to state a claim, the proper inquiry is whether the plaintiff, under any reasonable reading of the complaint, may be entitled to relief. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (discussing the impact of Bell Atlantic Corp. v. Twombly, 127 U.S. 1955 (2007), on pleading standards and motions to dismiss for a failure to state a claim).  When reading a complaint, the Court is mindful of its duty to accept as true all the factual allegations and construe the complaint in the light most favorable to the plaintiff.  Id.

**Analysis**

Read closely, Stoudt is alleging that she was the victim of a "bait and switch" scheme perpetrated by ALTA through Wood, its agent, whereby Stoudt was lured into refinancing an existing mortgage with promises of low monthly payments only to be stuck with higher monthly payments after the refinancing. There are no allegations of any contact between Citi and Stoudt, save ALTA's assignment of Stoudt's loan to Citi. Thus, the issue before the Court is whether Citi, as an assignee, is liable for fraud and violations of Pennsylvania's Consumer Protection Laws for the actions of its assignor, ALTA, in the absence of any contact between Citi and Stoudt regarding the mortgage loan.

Stoudt argues that Citi is derivatively liable for the conduct of ALTA and Wood because Citi is currently the assignee of the mortgage originated by ALTA. In support of her derivative liability theory, Stoudt references the FTC "Holder Rule," Revised Article 9 of the U.C.C., along with a case in support, and the common law. (Second Am. Compl. ¶¶ 20-26). As to the FTC Holder Rule (the "Rule"), 16 C.F.R. § 433[1], it does not apply to the mortgage loan at issue

---

[1] The Rule provides:
In connection with any sale or lease of goods or services to consumers, in or affecting commerce as "commerce" is defined in the Federal Trade Commission Act, it is an unfair or deceptive act or practice within the meaning of Section 5 of that Act for a seller, directly or indirectly, to:

    (a) Take or receive a consumer credit contract which fails to contain the following provision in at least ten point, bold face, type:

NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT

because the Rule does not apply to mortgage loans or mortgage refinancing loans. See Johnson v. Long Beach Mortgage Loan Trust, 2001-4, 451 F.Supp. 2d 16, 55 (D. D.C. 2006) ("Plaintiff's derivative claims under [the Rule] fail because a 'consumer credit contract' made in connection with any sale of 'goods and services' does not include a mortgage loan agreement not made in connection with a sale of goods or services."); In re Reagoso, Adversary No. 07-0047, 2007 WL 1655376, * 6 (Bnkr. E.D. Pa. June 6, 2007) (dismissing state law fraud and consumer protection claims against assignee of loan and noting the Rule does not apply to mortgage refinancing loans); and In re Woodsbey, 375 B.R. 145, 150 (Bnkr. W.D. Pa. 2006) (dismissing claims against

---

> AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.
>
> or,
>
> (b) Accept, as full or partial payment for such sale or lease, the proceeds of any purchase money loan (as purchase money loan is defined herein), unless any consumer credit contract made in connection with such purchase money loan contains the following provision in at least ten point, bold face, type:
>
> NOTICE
>
> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

16 C.F.R. § 433.2. The Rule abrogates "the holder in due course rule in consumer credit transactions, preserving the consumer's claims and defenses against the creditor-assignee. The FTC Holder Rule was, therefore, designed to reallocate the cost of seller misconduct to the creditor, who is in a better position to absorb the loss or recover the cost from the guilty party-the seller." See Simpson v. Anthony Auto Sales, Inc., 32 F.Supp. 2d 405, 409 (W.D. La. 1998).

assignee of mortgage in the face of plaintiff's FTC Holder Rule argument for derivative liability and noting that the Rule does not apply to mortgage loans).  In so far as Stoudt attempts to use Revised Article 9 of the U.C.C., Revised Article 9 is of little value because it does nothing more than to imply the operation of the FTC Holder Rule in the absence of the Rule's required notice in a consumer credit transaction.[2]  It does not extend the Rule's reach outside the realm of consumer credit transactions or otherwise impact such transactions.

Finally, as to the Plaintiff's reliance on the common law, she fails to cite a single case to support her theory of derivative liability.  Similarly, the Court is unable to find any authority to support her proposition.  However, the Court has found ample authority that holds affirmative claims of fraud and violations of consumer protection laws, including Pennsylvania's, are inappropriate to assert against an assignee where there are no allegations that the assignee had any contact with the mortgagor or made any representations to the mortgagor and the factual basis for the claims occurred prior to assignment of the mortgage loan.  See, e.g., In re

---

[2] The case cited in support of this theory is styled In re Barker, 306 B.R. 339 (Bnkr. E.D. Ca. 2004).  The case holds exactly what Stoudt contends it holds, namely that "[e]ven if the Notice is omitted in the Note, it is implied pursuant to Revised Article 9 of the U.C.C." (Second Am. Compl. ¶ 21.)  However, whether the Rule's required notice appears in the note or its operation is implied by law, the Rule is totally irrelevant outside the context of a consumer credit transaction.  The mortgage loan at issue here occupies the space where the Rule and its operation are irrelevant.

In Barker, the executrix of the debtor's estate sought reconsideration of distributions made to the assignee of a creditor of the debtor's estate as a result of a consumer transaction entered into by the debtor and creditor/assignor, not a mortgage loan.  Section 9-404 of California's Revised Article 9 was applied because it "bootstraps into all 'consumer transactions' enforcement of the [the Rule]," thereby exposing the assignee to the executrix's claim that the assignee was overpaid.  This case is not persuasive authority because it is based on a consumer credit transaction, not a mortgage loan.

Ameriquest Mortgage Co. Mortgage Lending Practices Litigation, MDL No. 1715, 2008 WL 5100909, *3-4 (N.D. Ill. Dec. 2, 2008) (dismissing fraud claims against mortgage loan servicer and noting that even if servicer was alleged to be an assignee such claims would fail because fraud must be based on direct and active involvement); Christopher v. First Mutual Corp., No. 05-1149, 2006 WL 166566, * 3 (E.D. Pa. Jan. 20, 2006) (dismissing claims against assignee for violations of Pennsylvania consumer protection laws because the plaintiff failed to "allege[] any contact with [the assignee], and has also not specified any misrepresentations made by [the assignee]"); McMaster v. Citi Group, No. 04-339, 2006 WL 1314379, *11 (E.D. Pa. May 11, 2006) (dismissing Pennsylvania consumer protection claims against assignee and servicer of mortgage loans because the plaintiff "has not attributed any specific acts of wrongdoing, or any unfair trade practices, to [the assignee]"); Paslowski v. Standard Mortgage Corp. of Ga., 129 F.Supp. 2d 793, 797-99 (E.D. Pa. 2000) (dismissing contract, breach of fiduciary duty, and consumer protection claims against assignee of mortgage on the theory that assignee cannot become affirmatively liable for the acts of mortgagees/assignor absent allegations that the assignee expressly assumed all obligations and consequences of mortgage contracts entered into between mortgagor and mortgagee/assignee); In re McConnell, 390 B.R. 170, 181-82 (Bankr. W.D. Pa. 2008) (dismissing fraud claim against assignees of mortgage loans because the complaint does not allege that "[the assignees] made misrepresentations to the Plaintiff about refinancing his mortgage . . . ."); and In re Balko, 348 B.R. 684, 695-96 (Bankr. W.D. Pa. 2006) (dismissing affirmative fraud claim against purchaser of obligor's pooled and securitized loan because the party "had no involvement whatsoever in the solicitation, underwriting, or closing"

of the loan and dismissing alleged violations of Pennsylvania's consumer protection laws because "there are no facts alleged in the Complaint which actively place [the purchaser] in the marketing or solicitation of the loan").

Here, the alleged fraud and acts that constitute violations of Pennsylvania's consumer protection laws occurred before the assignment of the loan to Citi.  Citi took no part in the solicitation, closing, or marketing of the mortgage loan.  There is no allegation of any conspiracy or any other relationship between Citi, ALTA, and Wood, other than that of assignee/assignor.  Further, there is no allegation that Citi assumed any obligations or consequences arising out of the mortgage loan entered into by Stoudt and ALTA.  Although Stoudt alleges that Citi "knew or should have known" that the loan was predatory, (Second Am. Compl. ¶ 25),  that Citi had "a duty to review the loan for compliance with state and federal law," (Id. at 23), and a "duty of reasonable care . . . to ensure that the loan was not unfair," (Id. at 24),  these allegations do not constitute violations of Pennsylvania's consumer protection laws or fraud.  Thus, the claims against Citi must be dismissed.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| LINDA STOUDT | : | | |
| | : | | |
| Plaintiff | : | CIVIL ACTION | |
| | : | | |
| vs. | : | | |
| | : | NO. 08-CV-2643 | |
| ALTA FINANCIAL MORTGAGE, | : | | |
| KELLY WOOD; & | : | | |
| CITIMORTGAGE, INC. | : | | |
| | : | | |
| Defendants | : | | |

**ORDER**

AND NOW, this 6th day of March, 2009, it is hereby ORDERED that the Defendant CitiMortgage's Motion to Dismiss, (Doc. No. 10), is GRANTED.

BY THE COURT:

*/s/ Thomas M. Golden*
THOMAS M. GOLDEN, J.